UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDWIN RAMIREZ**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES PARK POLICE**, *et al*, <br><br> Defendant. | Case No. 22-cv-187 (CRC) |

## MEMORANDUM OPINION

In the days following George Floyd's death in May 2020, racial justice protests sprang up across the country, including in Lafayette Square adjacent to the White House. Photojournalist Edwin Ramirez filmed the Lafayette Square demonstrations on behalf of two European-based news agencies. In this suit, Ramirez alleges that he suffered injuries at the hands of law enforcement officers who responded to the protests. He sued three sets of defendants for violations of his civil and constitutional rights, and negligence: (1) the United States and the U.S. Park Police, a component of the National Park Service ("Federal Defendants"); (2) the "Arlington County Government" and the Arlington County Police Department ("Arlington Defendants"); and (3) the "District of Columbia Government" and the D.C. Metropolitan Police Department ("D.C. Defendants"). Ramirez has since voluntarily dismissed the D.C. Defendants. The Federal and Arlington Defendants now move to dismiss the claims against them. For the reasons explained below, the Court will grant both motions and dismiss the case.

### I. Background

The Court draws this factual background from Mr. Ramirez's complaint and, as it must on a motion to dismiss, assumes the truth of all well-pled allegations. See Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).

Ramirez recorded the Lafayette Square protests on the evening of May 31, 2020. Compl. ¶¶ 4, 14. While there, he alleges that both protestors and members of the press were subjected to excessive force by law enforcement, including "violence, rubber bullets, horns, gas, and other physical force" as police officers worked to "reclaim ground in the park." Id. ¶¶ 12, 18, 22, 25. Ramirez recalls being trampled and shot by "five to seven rubber bullets." Id. ¶ 37. Ramirez does not specify who harmed him or their governmental affiliation, but alleges generally that the U.S. Park Police, Arlington Police Department, and D.C. Metropolitan Police Department all took part in the violence. As a result of his injuries, Ramirez required knee surgery, counseling, and other medical treatment. Id. ¶ 40.

In January 2022, Ramirez filed a four-count complaint against the United States, the United States Park Police, the "Arlington County Government," the Arlington County Police Department, the District of Columbia, and the D.C. Metropolitan Police Department—but none of their officials or employees, either by name or as "John Doe" defendants. The complaint alleges (1) a conspiracy to interfere with Ramirez's civil rights in violation of 42 U.S.C. § 1985(3); (2) failure to prevent said conspiracy in violation of 42 U.S.C. § 1986; (3) deprivation of civil rights in violation of 42 U.S.C. § 1983; and (4) negligence under both common law and the Federal Tort Claims Act, 28 U.S.C. § 1346. Ramirez seeks three million dollars for his injuries, lost wages, pain, and suffering. Id. ¶ 83.

Ramirez voluntarily dismissed the D.C. Defendants. Pl.'s Mot. Dis., ECF 7 (Mar. 14, 2022); Min. Order (Mar. 15, 2022). The Federal Defendants have moved to dismiss all claims against them for lack of subject matter jurisdiction and failure to state a claim. Defs.' Mot. Dismiss (May 11, 2022) ("Fed. Mot."). And the Arlington Defendants have moved to dismiss all claims against them for improper venue and failure to state a claim. Defs.' Mot. Dismiss (Mar. 18, 2022) ("Arl. Mot.").

## II. Legal Standards

In deciding a motion to dismiss, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court "must take all of the factual allegations in the complaint as true." Id. It also must "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006). That said, "conclusory statements" and "threadbare recitals of the elements" do not suffice. Ashcroft, 556 U.S. at 678.

## III. Federal Defendants' Motion to Dismiss

The Federal Defendants move to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Fed. Mot. For the following reasons, the Court will grant the motion.

### A. Civil Rights Claims

The Federal Defendants move to dismiss Ramirez's civil rights claims arising under 42 U.S.C. §§ 1983, 1985(3), and 1986 for lack of subject matter jurisdiction, arguing that those statutes do not waive federal sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

Section 1983 establishes a cause of action against persons who act under the color of state law to deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1985(3), meanwhile, prohibits conspiracies

3

among two or more people to deprive any person or class of persons of the equal protection of the laws, and section 1986 criminalizes knowingly failing to prevent such a conspiracy. 42 U.S.C. §§ 1985(3), 1986. As the Federal Defendants correctly assert, the United States and its agencies have not waived sovereign immunity with respect to any of those statutes. See Hohri v. United States, 782 F.2d 227, 245 n. 43 (D.C. Cir. 1986) ("[42 U.S.C. §§ 1983, 1985–1986], by their terms, do not apply to actions against the United States"), vacated on other grounds, 482 U.S. 64 (1987); Faller v. DOJ, Civ. A. No. 20-1597 (ABJ), 2021 WL 4243384, at *8 (D.D.C. Sept. 17, 2021) (holding that sections 1983, 1985 and 1986 do not waive federal sovereign immunity). Ramirez offers no law to the contrary.

Accordingly, the Court will dismiss Ramirez's claims against the Federal Defendants for violating his civil rights (§ 1983), conspiring to interfere with his civil rights (§ 1985(3)), and neglecting to prevent said conspiracy (§ 1986).

B. Negligence Claim

The only remaining claim against the Federal Defendants is Ramirez's negligence claim under the Federal Tort Claims Act ("FTCA").[1] Compl. ¶¶ 80-83. The FTCA permits suit against the federal government for allegedly negligent or wrongful conduct by its employees acting within the scope of their employment. 28 U.S.C. § 1346. But Ramirez's FTCA claim suffers from both jurisdictional and procedural flaws that require its dismissal.

---

[1] To the extent Ramirez attempts to sue the Federal Defendants for negligence under D.C. common law, he is foreclosed from doing so by the Federal Tort Claims Act, which is the exclusive remedy for suing federal agencies for injury resulting from negligent or wrongful acts or omissions. 28 U.S.C. § 2679(b)(1).

> 1. *Ramirez Cannot Sue the United States Park Police Under the Federal Tort Claims Act.*

The United States Park Police is entitled to dismissal of Ramirez's FTCA claim because only the United States, and not its agencies, may be sued under that statute.  See 28 U.S.C. § 2679(a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."); see also Goddard v. District of Columbia Redevelopment Land Agency, 287 F.2d 343, 345-46 (D.C. Cir. 1961) (affirming dismissal on same grounds); Coulibaly v. Kerry, 213 F. Supp. 3d 93, 125 (D.D.C. 2016) (dismissing on same grounds).  Accordingly, the Court will dismiss Ramirez's negligence claims against the Park Police.

> 2. *Exhaustion of FTCA Claim Against the United States*

As to Ramirez's negligence claim against the United States itself, the Federal Defendants maintain that Ramirez failed to properly exhaust his administrative remedies prior to filing suit. The FTCA bars plaintiffs from suing in federal court until they have exhausted their administrative remedies.  McNeil v. United States, 508 U.S. 106, 113 (1993).  The administrative process gives the accused agency an opportunity to investigate and evaluate the strength of the claim and determine if settlement is appropriate.  See GAF Corp. v. United States, 818 F.2d 901, 920 (D.C. Cir. 1987).  To properly exhaust, an FTCA claimant must "first present[] the claim to the appropriate Federal agency" and have that claim denied by the agency in writing or remain unresolved for at least six months.  28 U.S.C. § 2675(a).  Filing an FTCA complaint with an agency not accused of the alleged wrongdoing does not meet a plaintiff's burden to administratively exhaust with the "appropriate" federal agency.  See Norton v. United States, 530 F. Supp. 3d 1, 6–7 (D.D.C. 2021) (dismissing FTCA claim on exhaustion grounds because

plaintiff filed it with an unrelated agency). Failure to properly exhaust warrants dismissal of the claim. Henderson v. Ratner, No. 10-5035, 2010 WL 2574175, at *1 (D.C. Cir. Jun. 7, 2010) (per curiam).

Here, Ramirez filed an FTCA administrative claim with the "White House Counsel." Fed. Mot., Ex. A at 5 (Pl.'s SF 95). The United States asserts that the White House cannot be considered the "appropriate Federal agency" for purposes of exhaustion because it is not alleged to have engaged in any wrongdoing in this case. Id. at 13–16. While the complaint alleges the conduct occurred near the White House, to the extent the "White House Counsel" is an agency at all, the complaint does not identify any misconduct by the White House as an institution, or the White House Counsel in particular. By filing his FTCA paperwork with the White House rather than one of the agencies he claims are responsible for his injuries, Ramirez failed to properly exhaust his FTCA claim.

Ramirez responds that his claim is properly exhausted because he subsequently filed an FTCA complaint with the United States Park Police in May 2022. Pl.'s Opp'n Fed. Mot., Ex. A at 1. But a FTCA claim must be properly exhausted at the time it is filed in federal court. See McNeil, 508 U.S. at 111–12 (rejecting argument that subsequent receipt of formal denial from an agency is sufficient to satisfy the exhaustion requirement); Harrod v. U.S. Parole Comm'n, No. 13-774 (RMC), 2014 WL 606196, at *1 (D.D.C. 2014) (collecting cases). Ramirez's attempt to exhaust his FTCA claim nearly four months after filing his federal complaint cannot save it. The Court will therefore dismiss Ramirez's FTCA claim against the United States without prejudice.

Because no claims remain against the Federal Defendants, they are dismissed from the case.

### IV. Arlington Defendants' Motion to Dismiss

The Arlington Defendants move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue and Rule 12(b)(6) for failure to state a claim. The Court will grant the motion.

### A. The Arlington County Police Department Cannot be Sued

The Arlington County Police Department urges dismissal on the grounds that it is incapable of being sued. Arl. Mot. at 4. The Court agrees. "It is beyond peradventure that a 'noncorporate department or other body within a municipal corporation is not sui juris.'" Hinton v. Metropolitan Police Dept., Fifth Dist., 726 F. Supp. 875, 875 (D.D.C. 1989) (quoting Braxton v. National Capital Housing Authority, 396 A.2d 215, 216–17 (D.C. 1978)). And this general rule has been applied to the Arlington Police Department as well as other local law enforcement agencies in Virginia. See Est. of Harris v. Arlington Cnty., No. 99-CV-1144, 2000 WL 34477900, at *3 (E.D. Va. Jan. 14, 2000) ("[T]he [Arlington County] police department is not an entity capable of being sued."); see also Mobley v. City of Chesapeake, No. 06-cv-139 (JBF), 2006 WL 4738661, at *3 (E.D.Va. Aug. 30, 2006) (City of Chesapeake Police Department), aff'd 223 Fed. Appx. 200 (4th Cir. 2007); Young v. City of Norfolk, No. L03-931, 2003 WL 21730724, at *2 (Va. Cir. 2003) (Norfolk City Attorney's Office and Norfolk Police Department).

Ramirez's citation to Zemedageguhu v. Arlington County Board misses the mark. No. 15-cv-57(JCC/TRJ), 2015 WL 13854912, at *1 (E.D. Va. Feb. 24, 2015). There, the Arlington County Sheriff's Office was dismissed from the case after the plaintiff excluded the office from his amended complaint. Id. While the plaintiff there was permitted to sue the Arlington County *Sheriff* in her official capacity, that is irrelevant to whether Ramirez can sue the Arlington

County Police Department as an entity. Accordingly, the Arlington County Police Department is dismissed from the case.

### B. Venue

The Arlington Defendants also move to dismiss the case for improper venue under Rule 12(b)(3). Fed. R. Civ. P. 12(b)(3). Whether venue is proper "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Tex., 571 U.S. 49, 55 (2013). "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Haley v. Astrue, 667 F.Supp.2d 138, 140 (D.D.C. 2009) (quoting Pendleton v. Mukasey, 552 F.Supp.2d 14, 17 (D.D.C. 2008)). Still, the burden is on the plaintiff to establish that venue is proper, see, e.g., Williams v. GEICO Corp., 792 F.Supp.2d 58, 62 (D.D.C. 2011), and the Court is not obligated to accept the plaintiff's legal conclusions, Haley, 667 F.Supp.2d at 140.

Under the general venue provision for federal question cases set forth in 28 U.S.C. § 1391(b), venue is proper in the district where "the events giving rise to the suit occurred." § 1391(b)(2). Venue is plainly proper in D.C. if this provision were to apply, as no party disputes that the alleged misconduct occurred in Lafayette Square within the District.

The Arlington Defendants argue that the general venue statute does not apply, however, because a mutual aid agreement between the Arlington County Police Department and U.S. Park Police requires that suit be brought in Virginia. Arl. Mot. at 9-13. This argument is based on Section 7302 of the Intelligence Reform and Terrorism Prevention Act of 2004, which established a venue rule for some mutual aid agreements between federal and state or local governments in the Capital region. See 42 U.S.C. § 5196 note (National Capital Region Mutual

Aid). The liability provision of that statute provides that any action brought against a party rendering aid under an authorized mutual aid agreement must be brought "under the laws and procedures of the State of the party rendering aid and only in the Federal or State Courts located therein." Id. § 5196 note (d). According to the Arlington Defendants, Arlington County police officers were only in D.C. to respond to the Lafayette Square protests pursuant to a 2016 mutual aid agreement between the U.S. Park Police and the Arlington County Police Department. Arl. Mot., Ex. A at 1–5 ("Agreement"). That Agreement expressly states that "[t]his agreement is a 'mutual aid agreement' for purposes of § 7302 of the National Intelligence Reform and Terrorism Prevention Act of 2004" and that "the liability provisions of § 7302(d) . . . shall apply." Agreement at 1. Thus, according to Arlington Defendants, the suit must be transferred to Virginia.

That exact argument was raised and rejected by a fellow judge in this district in Black Lives Matter D.C. v. Trump. 544 F. Supp. 3d 15, 42-43 (D.D.C. 2021). There, Judge Friedrich concluded that Section 7302's venue provision did not apply because the Agreement was not executed by an "authorized representative of the Federal Government" as required by the statute. Id.; 42 U.S.C. § 5196 note (b)(1). The statute defines "an authorized representative of the Federal Government" as "any individual or individuals designated by the President with respect to the executive branch." 42 U.S.C. § 5196 note (a)(1). Judge Friedrich reasoned that the Agreement, which was signed by the Chief of the U.S. Park Police, was not properly authorized because "there is no indication that the Chief of the U.S. Park Police was so designated by the President." Black Lives Matter, 544 F. Supp. 3d at 42. Because the Agreement was not properly authorized under the relevant statute, Judge Friedrich held that the accompanying venue provision did not govern, and that the District was the proper venue. Id.

9

This Court is persuaded by Judge Friedrich's reasoning. The statute specifies who is authorized to enter mutual aid agreements under Section 7302 and there is no indication that the Chief of the U.S. Park Police was so authorized. Accordingly, the special venue provision does not apply and the suit remains in D.C.

The Arlington Defendants contest that outcome, arguing that the Chief of the U.S. Park Police had implied authority to enter the Agreement. That argument was also raised and rejected in Black Lives Matter. 544 F. Supp. 3d at 42. As Judge Friedrich noted, the statute is clear about who has authority to enter a mutual aid agreement, leaving little room for implied authority. Id. Subsection (b) of the statue clearly delineates who is expressly authorized to "enter into, request or provide assistance under mutual aid agreements with localities," and the statute defines mutual aid agreements as "an agreement, authorized under subsection (b)," 42 U.S.C. § 5196 note (a)(6). See Black Lives Matter, 544 F. Supp. 3d at 42. That express authority is limited to those in the executive branch designated by the President and their designees, 42 U.S.C. § 5196 note (a)(1). While the Arlington Defendants correctly note that the Secretary of the Interior has been delegated authority to enter such agreements, they offer no authority to support a finding that the Chief of the U.S. Park Police has also been delegated that authority. See Memorandum on Designation of Authorized Representative, 2 Pub. Papers 1823 (Nov. 28, 2012), https://www.govinfo.gov/content/pkg/PPP-2012-book2/pdf/PPP-2012-book2-doc-pg1823.pdf.

Because the Agreement was not properly authorized under Section 7302, that statute's special venue provision does not control and the District of Columbia remains the proper venue for this suit. The Court will therefore move to the substance of Ramirez's claim against the Arlington Defendants.

C. Section 1983 Municipal Liability

The Arlington Defendants move to dismiss Ramirez's section 1983 claim on the ground that he has failed to allege facts to support municipal liability. To hold a municipality liable for violating section 1983, a plaintiff must allege that the municipality followed a "policy or custom" that resulted in the constitutional injury. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Ramirez has failed to identify any specific policy or practice that caused his alleged injuries. In fact, Ramirez alleges that all the Defendants acted "*in violation of* [their] own regulations and standard operating procedures." Compl. ¶ 33 (emphasis added). Even in his opposition, Ramirez does not allege that his injuries resulted from any city policy or custom. Accordingly, his section 1983 claim against Arlington County is dismissed without prejudice.

D. Conspiracy Claims

The Arlington Defendants also move to dismiss Ramirez's conspiracy allegations for failure to state a claim under either section 1985(3) or section 1986. To state a claim under section 1985(3), a plaintiff must plead facts to support four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Martin v. Malhoyt, 830 F.2d 237, 258 (D.C. Cir. 1987). Further, the conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Section 1986, meanwhile, imposes liability on anyone who knowingly fails to prevent a conspiracy in violation of section 1985. "A plaintiff who has not stated a claim under § 1985 has no basis for relief under § 1986." Moore v.

Castro, 192 F. Supp. 3d 18, 36 (D.D.C. 2016), aff'd sub nom. Moore v. Carson, 775 F. App'x 2 (D.C. Cir. 2019).

Ramirez alleges generally that all Defendants "had an express agreement to deprive [him] as well as other members of the public and the press of their constitutional rights to be present at Lafayette Park on May 31, 2020." Compl. ¶ 30. But he offers scant detail as to the membership, timing, or contours of any such conspiracy. The only specifics offered are that then-Attorney General William Barr "requested 'riot teams' and other specialized agents" to use force against Ramirez and others in Lafayette Square, Compl. ¶ 31, and that President Trump's negative comments about the press permitted "hatred to invade the numerous Police Officers that attacked the Plaintiff," Compl. ¶ 35.

These bare-bones allegations are insufficient to create a plausible inference that the alleged conspiracy existed, let alone that Arlington County joined it. There are simply no allegations of "any events, conversations, or documents indicating that there was ever an agreement or meeting of the minds" amongst the Defendants to violate Ramirez's rights. See Barber v. District of Columbia Government, 394 F. Supp. 3d 49, 66 (D.D.C. 2019). Indeed, Judge Friedrich found similar, if not more detailed allegations insufficient to sustain a section 1985(3) conspiracy claim in Black Lives Matter, 544 F. Supp. 3d at 38. Moreover, even if Ramirez had sufficiently alleged a conspiracy, he has not alleged how the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." See Griffin, 403 U.S. at 102. Accordingly, Ramirez's section 1985(3) claim is dismissed. And without a viable section 1985 claim, Ramirez's section 1986 claim must be dismissed as well.

E. Negligence

That leaves Ramirez's negligence claim. The Arlington Defendants move to dismiss it for failure to state a claim and on the ground that Arlington County has immunity from tort liability. Finding that Ramirez has failed to adequately allege negligence, the Court need not assess Arlington County's immunity argument.

Generally, for a plaintiff in the District of Columbia to maintain a negligence cause of action, he must establish three elements: (1) that the defendant owed a duty of care to the plaintiff, (2) that the defendant violated that duty, and (3) that a causal relationship exists between the violation and the injury. See Simms v. District of Columbia, 669 F.Supp.2d 217, 227 (D.D.C.2010) (citing Wash. Metro. Area Transit Auth. v. Ferguson, 977 A.2d 375, 377 (D.C.2009)).

Ramirez alleges that all Defendants acted negligently when they "moved the crowd," "failed to erect an adequate structure and thereby allowed for the creation of a dangerous and unsafe condition," "failed to manage the crowd and properly communicate with each other," "failed to advise or adequately warn Plaintiff and others of the dangerous and unsafe actions to follow on May 31, 2020," and "failed to take reasonable safety or protective measures . . . by unreasonably failing to follow protocol with regularity." Compl. ¶ 81 (cleaned up).

But all those alleged actions presumably were undertaken by individual law enforcement officers at the scene, none of whom are party to this suit. Ramirez has not specifically alleged what acts, if any, Arlington County took that caused his injuries. As discussed in relation to his section 1983 claim, Ramirez does not identify any County policy or procedure. Nor does he allege that Arlington County negligently supervised or trained its officers. See e.g., Harvey v. Kasco, 109 F. Supp. 3d 173, 179 (D.D.C. 2015) (dismissing negligent training and supervision

13

claim for failure to allege supporting facts). Without any negligent act attributed to Arlington County, Ramirez's negligence claim cannot proceed.[2]

V. **Conclusion**

Accordingly, the Court will grant Federal Defendants' and Arlington Defendants' Motions to Dismiss. All claims against all defendants are dismissed. A separate Order shall accompany this opinion.

                                                      CHRISTOPHER R. COOPER
                                                      United States District Judge

Date: February 1, 2023

---

[2] Ramirez does not raise a theory of vicarious liability in either his complaint or his briefs. Because arguments not raised in briefing are waived, see New York Rehab. Care Mgmt., LLC v. N.L.R.B., 506 F.3d 1070, 1076 (D.C. Cir. 2007), such a theory cannot now save Ramirez's negligence claim. Nor has Ramirez sought to amend his complaint to add individual government officials or police officers as defendants.